UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| KAREN DOUGLAS | CASE NO. 2:17-CV-00817 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| P N K (LAKE CHARLES) L L C | MAGISTRATE JUDGE HANNA |

### REPORT AND RECOMMENDATION

Currently pending is the motion for summary judgment (Rec. Doc. 46), which was filed by the defendant, PNK (Lake Charles), L.L.C. d/b/a L'Auberge Lake Charles ("L'Auberge"). The motion is opposed. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, this Court recommends that the motion should be granted and that the plaintiff's claims should be dismissed with prejudice.

### Background

Karen Douglas, the plaintiff in this lawsuit, alleged that she was injured in a slip-and-fall incident in a ladies' restroom at L'Auberge's casino in Lake Charles, Louisiana, at approximately 5:20 a.m. on March 8, 2015. Surveillance video supplied by L'Auberge showed that the entrance to the ladies' restroom where the incident occurred is configured so that an entryway or foyer leads from the casino's

slot machine gaming area to a janitor's closet where the restroom attendant, L'Auberge employee Khalilah Calvin, kept the mop, mop bucket, and other cleaning supplies on the day of the incident. To enter the restroom, a person must walk from the gaming floor down the entryway almost all the way to the janitor's closet and then turn left at the end of the entryway into the restroom. The incident occurred as the plaintiff was exiting the ladies' restroom and walking back into the entryway.

During her deposition, the plaintiff testified that she and two friends took a bus from Houston to the casino in Lake Charles on Saturday, and that she played slot machines and blackjack before going to the restroom Sunday morning. Following the incident, the plaintiff returned to the gaming area and continued playing blackjack[1] before taking a bus back to Houston later that morning.[2]

During the deposition, the plaintiff stated that, after using the restroom, she washed and dried her hands then proceeded toward the restroom's exit.[3] She testified that she slipped and fell and was shocked to find herself on the floor,[4] having landed on her left side.[5] Her testimony regarding the presence of wet floor signs in

---

[1] Rec. Doc. 46-4 at 61.

[2] Rec. Doc. 46-4 at 63-64.

[3] Rec. Doc. 46-4 at 34.

[4] Rec. Doc. 46-4 at 35.

[5] Rec. Doc. 46-4 at 35.

2

the area where she fell is inconsistent. First, she testified that there were no wet floor signs present when she walked into the restroom.[6] Then she stated that she did not see a wet floor sign before she fell but she saw a wet floor sign after she fell because her legs kicked it over when she fell.[7] She claimed that the sign was not in the area where she began to slip.[8] Then she testified that she saw the wet floor sign against the wall and ignored it because she was not walking against the wall.[9] Although she said "it didn't pertain to me because I wasn't in that area,"[10] and "I wasn't walking close against the wall, and so it didn't pertain to me,"[11] the sign was near enough to the area where she was walking that her feet struck the sign and knocked it over when she fell.[12] The plaintiff further testified that there was no standing water on the floor but the floor was damp because her paints were damp after she fell.[13] The

---

[6]  Rec. Doc. 46-4 at 24.

[7]  Rec. Doc. 46-4 at 36.

[8]  Rec. Doc. 46-4 at 37.

[9]  Rec. Doc. 46-4 at 38.

[10] Rec. Doc. 46-4 at 38-39.

[11] Rec. Doc. 46-4 at 39.

[12] Rec. Doc. 46-4 at 36, 37.

[13] Rec. Doc. 46-4 at 51-52.

plaintiff claims that the restroom attendant came over to her after she fell and apologized for not having placed the wet floor sign in the right spot.[14]

L'Auberge produced surveillance video that shows a casino employee mopping the entryway to the ladies' restroom six times in less than half an hour before the plaintiff entered the restroom and one time after the plaintiff entered the restroom. Although the plaintiff testified that she did not see a restroom attendant before the incident,[15] the video shows the plaintiff following Ms. Calvin into the restroom. The video also shows the plaintiff walking from the gaming area of the casino down the restroom's entryway toward the open door of the janitor's closet, where a bright yellow mop bucket is clearly visible. Approximately one minute before the plaintiff fell, the casino employee walked with the mop out of the restroom proper into the entryway and placed an A-frame-style wet floor sign near the spot where the actual entrance to the restroom meets the entryway. When the plaintiff fell, she kicked that sign over. The video also depicts a tall pedestal sign located where the entryway meets the gaming floor. Although that sign cannot be read in the surveillance video, L'Auberge submitted a photograph of that sign, clearly establishing that it reads, in all capital letters, "caution wet floor."[16] The plaintiff

---

[14] Rec. Doc. 46-4 at 35, 36.

[15] Rec. Doc. 46-4 at 31.

[16] Rec. Doc. 46-6.

walked past that sign when she walked from the gaming floor into the entryway to the restroom.

The plaintiff claims that L'Auberge is liable for her fall and the resulting injuries, while L'Auberge argues that the plaintiff has not proven that it is liable.

## Analysis

### A. The Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[17] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[18]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[19] If the

---

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[18] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[19] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[20] All facts and inferences are construed in the light most favorable to the nonmoving party.[21]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[22] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[23]

## B.  The Applicable Statute

In a diversity case such as this one, we apply state substantive law, here Louisiana law.[24] Therefore, L'Auberge's liability for the plaintiff's accident and injury is governed by the Louisiana Merchant Liability Act, La. R.S. 9:2800.6, which reads as follows in its entirety:

> A.   A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in

---

[20]  *Washburn v. Harvey*, 504 F.3d at 508.

[21]  *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[22]  *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[23]  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[24]  *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

The statute requires a plaintiff to prove three things: (1) there was a condition that presented an unreasonable risk of harm, (2) the merchant either created the condition or had actual or constructive notice of the condition, and (3) the merchant

failed to exercise reasonable care. If the plaintiff fails to prove any one of those three elements, the merchant is not liable. The Louisiana Supreme Court has found this statute to be clear and unambiguous.[25]

### C. THE PLAINTIFF FAILED TO PROVE THAT L'AUBERGE IS LIABLE

In this case, it is alleged that the mopping of the ladies' restroom was a condition that presented an unreasonable risk of harm. The video supplied by L'Auberge showed that, during the half hour preceding the plaintiff's fall, a L'Auberge employee went into the ladies' restroom six times while mopping the floor. The video also showed that, after the plaintiff entered the ladies' restroom, the L'Auberge employee again entered the restroom while mopping. Approximately one minute before the plaintiff's fall, the L'Auberge employee is shown moving the wet floor sign from inside the restroom to a location near the door into the restroom from the entryway. The video then shows the sign falling over as the plaintiff lost her balance, fell to the floor, and kicked the sign.

Based on the video supplied by L'Auberge, there are no disputed facts regarding the second of the three elements necessary for a successful merchant liability claim. The wet floor was created by L'Auberge when its employee mopped the restroom floor. But the other two elements are disputed.

---

[25] *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 09/09/97), 699 So.2d 1081, 1084.

8

The first element that must be proven for a successful claim under the relevant statute is that a condition presented an unreasonable risk of harm. In a slip and fall case, such as this one, a hazard is established when the plaintiff's fall results from a foreign substance on a floor or an unreasonably slippery surface.[26] Here, it is undisputed that L'Auberge's employee mopped the restroom floor and the entryway to the restroom just moments before the plaintiff fell. It is equally undisputed that the floor was damp and caused the plaintiff's pants to become damp.

However, "[t]here are a multitude of reasons, including patron safety, requiring that store owners clean up various spills on their floors and provide a clean environment."[27] Louisiana "[j]urisprudence has specifically found that mopped floors do not create an unreasonable risk of harm when the appropriate signage is used to warn patrons of the condition of the floor."[28] Furthermore, as to the third element that must be satisfied for a successful claim of this nature, a "merchant's duty of care requires that reasonable protective measures be undertaken to insure

---

[26] *Pierite v. DG Louisiana, LLC*, 2018-149 (La. App. 3 Cir. 11/07/18), 258 So.3d 901, 906 (citing *Burnett v. M & E Food Mart, Inc. No. 2*, 00-350 (La. App. 3 Cir. 11/15/00), 772 So.2d 393, 396, *writ denied*, 00-3425 (La. 02/16/01), 786 So.2d 101).

[27] *Melancon v. Popeye's Famous Fried Chicken*, 2010-1109 (La. App. 3 Cir. 3/16/11), 59 So. 3d 513, 516.

[28] *Id.* at 316 (collecting cases).

9

that the premises are kept free from substances that might cause a customer to fall."[29] Importantly, "[s]tore owners are not required to insure against all accidents that occur on the premises."[30] "They are not absolutely liable whenever an accident happens."[31]

This Court has carefully reviewed L'Auberge's surveillance video, which shows two wet floor signs, one located where the restroom's entryway met the gaming floor and another located where the actual entrance to the restroom met the entryway. The video clearly depicts the plaintiff walking past the first, taller pedestal-style sign into the entryway, and it clearly depicts the plaintiff's legs making contact with the second, smaller A-frame-style sign and knocking it over when she fell. "Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."[32] Therefore, this Court "need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the

---

[29] *Jackson v. Delchamps, Inc.*, 96-2417 (La. App. 1 Cir. 03/27/97); 691 So.2d 332, 335, *writ denied*, 695 So.2d 997 (La. 06/13/97).

[30] *Id*.

[31] *Id*. (citing *Retif v. Doe*, 93-1104 (La. App. 4 Cir. 2/11/94); 632 So.2d 405, *writ denied*, 94-1000 (La. 06/17/94), 638 So.2d 1095).

[32] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

videotape.'"[33] The video clearly shows that appropriate signage was used to warn patrons such as the plaintiff of the condition of the floor. Thus, the video discredits the plaintiff's claim that there was no signage in the area where she was walking just before the accident occurred as well as her claim that the smaller sign was not placed where it should have been. The placement of the signs establishes, first, that the casino's mopped floors did not create an unreasonable risk of harm because appropriate signage was used to warn patrons of the condition of the floor and, second, that L'Auberge exercised reasonable care in notifying its patrons of the possibility of a wet floor in the restroom and in the entryway to the restroom.

The plaintiff failed to prove two of the three required elements of her case. Specifically, the evidence of appropriate signage on the video surveillance tape established that the plaintiff failed to show that the casino's floors posed an unreasonable risk of harm or that L'Auberge did not exercise reasonable care. To the contrary, the video evidence established that L'Auberge took appropriate protective measures, constituting reasonable care under the circumstances to prevent the existence of a condition presenting an unreasonable risk of harm.

---

[33] *Id.* (quoting *Scott*, *supra*, 550 U.S. at 381).

11

### D.     The Jurisprudence Supports Summary Judgment in L'Auberge's Favor

The factual scenario presented in this case is similar to that of other cases in which summary judgment has been rendered in favor of a merchant. In *Melancon v. Popeye's Famous Fried Chicken*, for example, the plaintiff entered a Popeye's restaurant, ordered and received her food, and upon turning away from the counter to exit the restaurant, slipped and fell.[34] She testified that "there were no wet floor signs anywhere" but that an employee had mopped the store while she was standing at the counter.[35] The court of appeal turned to Popeye's video surveillance, which showed "two bright yellow standard 'wet floor' signs in the Popeye's restaurant—one near the counter and the other at the entrance, both of which are readily visible to anyone entering the store."[36] The video depicted the plaintiff walking directly past one of the signs upon entering the restaurant, and later, "looking directly at a bright yellow mop bucket."[37] "She then walks past a 'wet floor' sign and directly past the employee who is mopping the floor."[38] In affirming summary judgment in favor of Popeye's, the court found that "Popeye's exercised reasonable care by

---

[34]    *Melancon*, *supra*, 59 So. 3d at 515.

[35]    *Id*.

[36]    *Id*. at 515-16.

[37]    *Id*. at 516.

[38]    *Id*.

12

placing two different 'wet floor' signs to alert customers that the floor had been mopped."[39] As to the plaintiff's contention that there were no wet floor signs, the court stated that "[t]he only explanation for [the plaintiff]'s lack of awareness regarding the wet floor is her inattentiveness."[40]

In *Jones v. Circle K Stores, Inc.*, the court relied on *Melancon*, in part, to find that Circle K had exercised reasonable care by placing two yellow wet floor signs to alert customers that the floor had just been mopped.[41] There, "[v]ideo surveillance show[ed] that right after entering the store, [p]laintiff passed within a few feet of a yellow wet floor sign, and she also walked by a Circle K employee mopping the floor."[42] The video also showed "another yellow wet floor sign a few feet away."[43] The court noted that Circle K had placed one of the two signs "right near the beverage counter where [p]laintiff fell."[44]

L'Auberge complied with the reasonable-care standards exemplified in the cited cases. The video shows that there was a pedestal-style wet floor caution sign

---

[39] *Id.*

[40] *Id*.

[41] *Jones v. Circle K Stores, Inc.*, No. 16-cv-00691-BAJ-EWD, 2018 WL 910163, at *2 (M.D. La. Feb. 15, 2018) (citing *Melancon*, *supra*, 59 So.2d at 516).

[42] *Id.* at *1.

[43] *Id*.

[44] *Id*. at *2.

at the end of the gaming floor and the beginning of the restroom entryway and there was a smaller collapsible A-frame-style wet floor sign at the intersection of the restroom door and the restroom entryway, both of which were clearly visible to all patrons. Additionally, the bright yellow mop bucket in the janitor's closet was clearly visible to patrons walking down the entryway from the gaming floor toward the restroom. As the court stated in *Melancon*, "[t]he only explanation for [the plaintiff]'s lack of awareness regarding the wet floor is her inattentiveness."[45] Accordingly, L'Auberge is entitled to summary judgment in its favor.

## Conclusion

For the reasons fully explained above, it is recommended that L'Auberge's motion for summary judgment (Rec. Doc. 46) should be granted and that the plaintiff's claims should be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

---

[45] *Melancon, supra*, 59 So.3d at 516.

14

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[46]

Signed at Lafayette, Louisiana on this 19th day of February 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[46] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).